**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathryn Marie Anderson,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-08049-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Kathryn Marie Anderson's application for disability insurance benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 18, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 22, "Def. Br."), and Plaintiff's Reply Brief (Doc. 23, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 27, "R.") and now vacates and remands the Administrative Law Judge's ("ALJ") decision for further proceedings.

**I.    BACKGROUND**

Plaintiff filed an application for disability insurance benefits on May 12, 2016, for a period of disability beginning on January 5, 2016. (R. at 18.) Her claim was denied initially on October 4, 2016, and upon reconsideration on January 4, 2017. (*Id.*) Plaintiff appeared before the ALJ for a video hearing regarding her claim on November 30, 2018,

which the ALJ denied on January 31, 2019. (*Id.* at 18, 24.) On January 6, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (*Id.* at 1-3.)

The ALJ's analysis in this case was somewhat unusual in that it did not proceed beyond step two of the disability evaluation. During step two, the ALJ must determine whether the claimant has a "severe," "medically determinable" physical or mental impairment.[1] Here, the ALJ determined that Plaintiff had the following eight medically determinable impairments: (1) depressive disorder with anxiety; (2) hyperlipidemia; (3) gastro esophageal reflux disease; (4) hiatal hernia; (5) hypertension; (6) obesity; (7) hypothyroidism; and (8) a renal mass. (*Id.* at 20.) In contrast, although Plaintiff asserted that she also suffered from "significant knee pain caused by osteoarthritis," the ALJ concluded that Plaintiff's osteoarthritis was "not a medically determinable impairment." (*Id.* at 20-21.) The ALJ's analysis on this point was as follows:

> Of note, the claimant testified that she is unable to work because of an inability to stand for more than an hour without significant knee pain caused by osteoarthritis. While the claimant may have had signs and symptoms of osteoarthritis prior to her alleged onset date [of January 5, 2016], records from the relevant period were negative for arthritis. While an MRI of her left knee from 2015 showed degenerative changes in her left knee, she underwent an arthroscopic chondroplasty and debridement of her medial femoral condyle and the lateral patella that same year. Subsequent imaging studies failed to show the presence of degenerative changes or arthritis in her knees. For example, a September 2016 x-ray of her right knee was negative. X-rays of her knees from July 2018 were negative, with no mention of arthritis.
>
> Clinical examinations also showed the claimant exhibiting good functioning. Kristina Walker, D.O., completed a consultative examination with the claimant in September 2016, observing that while the claimant had difficulties with her balance and squatting, she walked with a normal gait and she was able to stoop without difficulty. Dr. Walker noted that the claimant was able to stand from a sitting position and sit from a standing position

---

[1] *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

> without difficulty or assistance. Subsequent examinations continued to show the claimant with a normal range of motion in her knees along with a steady gait. In short, the claimant has not presented imaging studies or clinical evidence of osteoarthritis, and as such, the undersigned has determined that it is not a medically determinable impairment.

(*Id.*, citations omitted.)

Finally, the ALJ evaluated the severity of ALJ's medically determinable impairments and concluded, after considering the medical evidence and testimony, that all of them were non-severe (and, thus, that Plaintiff was not disabled). (*Id.* at 21-24.) In the course of this severity analysis, the ALJ also made some additional statements regarding Plaintiff's complaints of knee pain, concluding that (1) Plaintiff's symptom testimony regarding knee pain was "not entirely consistent with the medical evidence and other evidence in the record"; (2) Plaintiff "walked with a normal gait on examination with the consultative examiner, as well as during examinations with her treatment providers," and also "demonstrated a normal range of motion in her knees" when meeting with those providers; (3) Plaintiff "reported to her primary care physician that she walks three miles a day, which is inconsistent with her testimony of an inability to walk or stand for prolonged periods"; (4) although Plaintiff "testified that she uses a cane when she will be standing or walking for extended periods, . . . the undersigned was unable to find an instance of her presenting to a medical appointment with a cane or evidence that a cane was prescribed by a physician"; and (5) although the "record shows [Plaintiff] has a history of degenerative changes to her knee, which resulted in her undergoing arthroscopic surgery in September 2014," "she appears to have made a full and complete recovery," she "worked for several years following this procedure," and "a review of her medical record does not show her experiencing a worsening in her condition, as imaging studies were consistently negative and her clinical examinations failed to demonstrate deficits in her functioning." (*Id.* at 22.) Additionally, the ALJ assigned "little weight" to the opinion of Dr. Walker, a consultative examiner, for the sole reason that Dr. Walker "appears to limit [Plaintiff] to a light level because of subjective complaints of pain, rather than her own exam findings,

which showed [Plaintiff] walking with a normal gait and demonstrating full range of motion in her joints." (*Id.* at 24.)

## II. LEGAL STANDARD

When reviewing an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she

determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANAYSIS

In this proceeding, Plaintiff focuses all of her arguments on the ALJ's evaluation of her knee condition. *First*, Plaintiff contends the ALJ erred in concluding that her osteoarthritis of the knee was not a "medically determinable" impairment (Pl. Br. at 11-14); *second*, Plaintiff contends the ALJ erred in assigning "little weight" to the opinion her consultative examiner, Dr. Walker (*id.* at 14-18); and *third*, Plaintiff broadly contends the ALJ erred by engaging in an "overly stringent application of the severity requirements at step 2" (*id.* at 11-19). Each assignment of error is addressed below.

### A. The ALJ Erred In Concluding That Plaintiff's Osteoarthritis Was Not A "Medically Determinable" Impairment

As noted, step two of the disability analysis requires the ALJ to determine whether the claimant has a "severe," "medically determinable" physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). As for the "medically determinable" component of this requirement, the impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. *See generally Johnson v. Saul*, 848 F. App'x 703, 705 (9th Cir. 2021) ("[O]bjective medical evidence from an acceptable medical source [is] necessary to conclude that an impairment is medically determinable . . . .").

Here, the ALJ concluded that Plaintiff's osteoarthritis was not medically determinable because (1) "[w]hile an MRI of [Plaintiff's] left knee from 2015 showed degenerative changes in her left knee, she underwent an arthroscopic chondroplasty and debridement of her medial femoral condyle and the lateral patella that same year," (2) all of Plaintiff's post-onset date (*i.e.,* post-January 2016) imaging studies, including a

September 2016 x-ray and July 2018 x-ray, "were negative, with no mention of arthritis," and (3) Plaintiff's examiner, Dr. Walker, observed that Plaintiff "exhibit[ed] good functioning," including walking with a normal gait, stooping without difficulty, and being able to sit from a standing position and stand from a sitting position.  (R. at 20-21.)

Plaintiff argues the ALJ's analysis on this point was erroneous.  (Pl. Br. at 11-14.)  Plaintiff emphasizes that MRIs conducted in July 2014 revealed that she had "thinning of the articular cartilage" in *both* knees, yet the ALJ did not even mention the right-knee MRI.  (*Id.* at 12-13.)  Plaintiff argues this omission was significant because "cartilage does not simply regenerate on its own."  (*Id.*)  Thus, because "Plaintiff never had surgery on her right knee," Plaintiff contends that the July 2014 "MRI provides clear proof that Plaintiff has a severe, medically determinable impairment" in her right knee.  (*Id.*)  As for her left knee, Plaintiff acknowledges that she subsequently had surgery on that joint but contends the particular procedures performed during that surgery ("arthroscopic chondroplasty and debridement") would not have addressed her thinning cartilage.  (*Id.*)  As for the x-rays discussed by the ALJ, Plaintiff argues that "the x-rays . . . are actually from 2013," so "their findings are superseded by the MRI results from 2014 and certainly do not indicate an improvement in Plaintiff's condition."  (*Id.* at 13-14.)  Finally, Plaintiff contends that Dr. Walker's opinion further established the existence of a medically determinable impairment because Dr. Walker "diagnosed Plaintiff with arthritis of the bilateral knees."  (*Id.* at 14.)

In response, the Commissioner argues that the July 2014 MRI does not establish the existence of osteoarthritis in Plaintiff's right knee because "orthopedist Dr. Moore, upon reviewing these [July 2014] MRIs, concluded that . . . the right knee showed only 'minimal fraying'" and ultimately declined to perform surgery on Plaintiff's right knee. (Def. Br. at 8.)  As for Plaintiff's left knee, the Commissioner argues that her subsequent surgery resolved the issue because "[a]fter this surgery, objective studies did not show any evidence of osteoarthritis."  (*Id.* at 7.)  In a related vein, the Commissioner concedes that the ALJ "erroneously referred to July 2013 x-rays as July 2018 x-rays" but contends that the ALJ correctly identified the date of the other set of x-rays, which were taken in September 2016,

and argues that the September 2016 x-rays provide substantial evidence in support of the ALJ's opinion because they "showed no abnormalities" in Plaintiff's right knee. (*Id.* at 7 n.3.) Finally, as for Dr. Walker, the Commissioner does not acknowledge Plaintiff's contention that Dr. Walker offered a specific diagnosis of bilateral arthritis in the knees—instead, the Commissioner emphasizes that Dr. Walker's observations of Plaintiff's functional abilities were normal. (*Id.* at 7.)

In reply, Plaintiff makes the following arguments: (1) although Dr. Moore may have determined that the osteoarthritis in her right knee did not require surgery, this is not the same thing as a determination "that her knee condition was not a medically determinable impairment"; (2) the September 2016 x-ray does not "negate the findings of the 2014 MRI" because "MRIs are uniquely useful for spotting musculoskeletal conditions including cartilage loss," whereas "X-rays are ideal for spotting fractures, but they will not show subtle bone injuries, soft tissue injuries, or inflammation"; (3) her left knee surgery did not eliminate the osteoarthritis in that joint, either, because it was intended to address other conditions separate from the thinning of her cartilage; and (4) "Dr. Walker, an acceptable medical source, included a 'diagnosis of arthritis to bilateral knees.'" (Reply at 1-4.)

The ALJ's determination that Plaintiff's osteoarthritis did not qualify as a "medically determinable" impairment cannot be affirmed on this record. First, and most important, an MRI on Plaintiff's right knee in July 2014 revealed the existence of "[t]hinning of the articular cartilage throughout the apex and lateral facet of the patella." (R. at 341-42.) This appears to be objective, "medically determinable" evidence of osteoarthritis in the right knee. Unfortunately, the ALJ did not acknowledge or discuss this MRI—instead, the ALJ focused only on the MRI of Plaintiff's left knee. This was error. *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject 'significant probative evidence' without explanation") (citation omitted). Although the Commissioner attempts to fill this analytical void by proffering reasons why Dr. Moore's report could be construed as proof that Plaintiff's right-knee condition was not medically determinable, the problem is that the ALJ did not rely on Dr. Moore's report in this manner in the opinion.

As the Ninth Circuit has emphasized, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Similarly, although the ALJ pointed out that "a September 2016 x-ray of [Plaintiff's] right knee was negative" (R. at 20), Plaintiff correctly notes that MRIs may reveal degenerative changes that don't appear in x-rays. Indeed, the September 2016 x-ray only stated that Plaintiff's right knee did not have any "soft tissue calcifications or radiopaque foreign bodies" or "fracture or dislocation." (R. at 379.) It said nothing at all about osteoarthritis. At any rate, because the ALJ failed to acknowledge the July 2014 MRI of Plaintiff's right knee, the Court has no way of knowing whether the ALJ found that the September 2016 x-ray was more probative of the existence (or non-existence) of osteoarthritis in Plaintiff's right knee than the July 2014 MRI. This is an issue that requires further elaboration on remand.

Second, separate and apart from the MRI evidence, Plaintiff proffered evidence that Dr. Walker, her consultative examiner, opined that she had bilateral arthritis in the knees. (R. at 256 ["What is the diagnosis? 1) Arthritis to bilateral knees per history with crepitus and subjective tenderness to palpitation to bilateral knees and difficulty squatting. No radiographic imaging provided."].) Although the parties have not briefed the issue in any detail, this diagnosis would also seem to qualify as proof that Plaintiff's osteoarthritis of the right knee was "medically determinable"—after all, it was a diagnosis of an "anatomical, physiological, or psychological abnormalit[y]" that arose from "medically acceptable clinical and laboratory diagnostic techniques" and was rendered by "an acceptable medical source." 20 C.F.R. § 404.1521. Notably, in the portion of the opinion addressing whether Plaintiff's osteoarthritis was medically determinable, the ALJ did not acknowledge Dr. Walker's opinion on this issue. Instead, the ALJ's only discussion of Dr. Walker was to note that Dr. Walker's "[c]linical examinations . . . showed [Plaintiff] exhibiting good functioning." (R. at 21.) The problem with this approach is that it

conflates distinct issues. Whether Plaintiff's osteoarthritis is "medically determinable" is a separate inquiry from whether the osteoarthritis interferes with her functional abilities to a sufficient degree to render her disabled.

Finally, even if subsequent portions of the ALJ's analysis could be construed as rejecting *all* of Dr. Walker's opinions (including her diagnosis of bilateral osteoarthritis), the ALJ committed error when rejecting Dr. Walker's opinions, as discussed below.

B.  **The ALJ Erred In Rejecting Dr. Walker's Opinions**

As noted, the ALJ discussed Dr. Walker's opinions and findings in two different portions of the underlying order. First, in the portion of the order addressing whether Plaintiff's osteoarthritis was medically determinable, the ALJ seemed to credit Dr. Walker's evaluation of Plaintiff's functional abilities, noting that Dr. Walker "observ[ed] that while [Plaintiff] had difficulties with balancing and squatting, [Plaintiff] walked with a normal gait and she was able to stoop without difficulty. Dr. Walker [also] noted that [Plaintiff] was able to stand from a sitting position and sit from a standing position without difficulty or assistance." (R. at 21.) Second, in the portion of the order addressing whether Plaintiff's impairments were severe, the ALJ chose to assign "little weight" to Dr. Walker's opinions, for the sole reason that Dr. Walker "appears to limit [Plaintiff] to a light level because of subjective complaints of pain, rather than her own exam findings, which showed [Plaintiff] walking with a normal gait and demonstrating full range of motion in her joints." (*Id.* at 24.)

Plaintiff argues the ALJ erred by discounting Dr. Walker's opinions in this manner. (Pl. Br. at 14-18.) According to Plaintiff, "Dr. Walker's opinion was supported by her examination findings" because Dr. Walker observed that Plaintiff had difficulty squatting and balancing and detected tenderness when examining Plaintiff's knees. (*Id.* at 14-15.) Plaintiff also contends that Dr. Walker's opinions were based on, and consistent with, other medical evidence in the record, including observations by other medical sources and a history of receiving knee injections, so it was "not accurate" for the ALJ to reject the opinions on the sole ground that they were based on subjective complaints. (*Id.* at 15-17.)

- 9 -

Finally, Plaintiff argues that the ALJ employed "illogical" reasoning when rejecting Dr. Walker's opinions because "Dr. Walker's findings . . . [of] a normal gait and a full range of motion" are consistent with, and do not undermine, Dr. Walker's ultimate opinion that Plaintiff is capable of standing and walking for six to eight hours per day and simply needs to be limited to "occasional" lifting, carrying, working around heights, and working around moving machinery. (*Id.* at 17-18.)

In response, the Commissioner argues that the ALJ properly rejected Dr. Walker's opinions due to the incongruity between Dr. Walker's "benign" and "normal" clinical findings as to Plaintiff's functional abilities and Dr. Walker's ultimate opinions. (Def. Br. at 12-14 & n.5.) As for Plaintiff's argument that Dr. Walker did not rely solely on her clinical observations, but also relied on other medical sources' observations, the Commissioner argues that any such reliance was misplaced because "much of the evidence that Plaintiff argues is consistent with Dr. Walker's opinion pre-dated the relevant period by several years." (*Id.* at 14.) The Commissioner then proceeds to offer a detailed discussion of why "the evidence that Plaintiff cites from within the relevant period does little to support her argument," including that some of the medical sources were "naturopaths [who] are not acceptable medical sources." (*Id.* at 14-16.)

In reply, Plaintiff reiterates her position that Dr. Walker's observations of a normal gait and range of motion are not inconsistent with Dr. Walker's opined-to limitations and that Dr. Walker did not rely solely on her subjective complaints. (Reply at 6-8.)

Where, as here, the opinion of a treating or examining physician is contradicted, "it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

These standards require reversal here. The overarching issue is that the ALJ misconstrued Dr. Walker's opinion as being based solely on Plaintiff's subjective

complaints of pain. (R. at 24 ["The undersigned has given [Dr. Walker's] opinion little weight, as she appears to limit [Plaintiff] to a light level because of subjective complaints of pain, rather than her own exam findings, which showed [Plaintiff] walking with a normal gait and demonstrating full range of motion in her joints."].) In fact, Dr. Walker's opinion was based not only on Plaintiff's subjective complaints of pain (and Dr. Walker's clinical observations) but also on medical records from other medical providers. (R. at 252 [noting that Dr. Walker considered, *inter alia*, the "Progress Note from Denise McLain, nurse practitioner, dated 5/20/2016, which shows . . . arthritis to bilateral knees"].) Although the Commissioner identifies various reasons why the ALJ could have found that Dr. Walker's reliance on these materials was misplaced, this approach is foreclosed once again by the "[l]ong-standing principles of administrative law [that] require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1226.

Finally, to the extent the ALJ's rejection of Dr. Walker's opinions was based on the belief that her opined-to limitations were inconsistent with her clinical observations, the ALJ provided no analysis or explanation for how she came to this conclusion. Although the Commissioner's brief contains an extensive discussion of why the facts in the record could be construed to support this conclusion, the ALJ should have been the one to provide this analysis in the first instance. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review. A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.") (citation omitted). This, too, supports a remand for further proceedings.

…

…

### C. The ALJ Erred In The Severity Analysis

As noted, the ALJ did not proceed beyond step two of the disability analysis because she determined that all of Plaintiff's impairments were non-severe.

The Ninth Circuit has characterized the step-two severity requirement as a "*de minimis* screening device" designed to weed out "groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1273 (citation omitted). Only if the evidence establishes a "slight abnormality" that has "no more than a minimal effect on [an individual's] ability to work" should the inquiry end at step two. *Smolen*, 80 F.3d at 1290.

Here, because the Court has determined that the ALJ erred in rejecting the opinions of Dr. Walker, it follows that the ALJ erred in determining that Plaintiff's osteoarthritis was non-severe. Dr. Walker's opined-to limitations included that Plaintiff can only "occasionally" lift or carry 20 pounds and can only stand or walk for 6-8 hours in an 8 hour day. (R. at 256-57.) Assuming these limitations are accurate, Plaintiff's impairment is sufficiently severe to satisfy the step-two "*de minimis* screening device." *Smolen*, 80 F.3d at 1290.

Finally, the Court also rejects the Commissioner's argument that the ALJ's decision may be affirmed based on harmless error principles. Although such principles do apply in the Social Security context, the record here—in particular, the ALJ's failure to proceed past step two and the ALJ's failure to provide legally sufficient reasons for rejecting the opinions of Dr. Walker—makes it impossible to apply them. To be clear, the Court expresses no opinion as to the ultimate resolution of this matter on remand. Plaintiff's admission in 2018 to her primary care physician that "[s]he walks 3 miles a day" (R. at 381) seems difficult to reconcile with the theory that Plaintiff suffers from disabling

osteoarthritis in her knee. Nevertheless, it is the ALJ's role to provide a clear statement of the agency's rationale for granting or denying benefits. *Brown-Hunter,* 806 F.3d at 492.

**IT IS THEREFORE ORDERED** vacating and remanding for further proceedings the January 31, 2019 decision of the ALJ (R. at 18-24), as upheld by the Appeals Council on January 6, 2020 (R. at 1-3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 27th day of July, 2021.

_____
Dominic W. Lanza
United States District Judge